Good morning. Good morning, Your Honors. May it please the Court, my name is Michael Radigan for Petitioner-Appellant Chirajan Subedi. A refugee is defined as an alien unwilling to return to his country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Although the term persecution is not defined in the Immigration and Nationality Act, this Court and other courts have defined persecution, in turn, as the infliction of suffering or harm upon those who differ in race, religion, or political opinion in a way that is offensive. This Court has held, like other circuits, that persecution is an extreme concept, it does not include every sort of treatment that our society regards as offensive, and it's decided on a case-by-case basis. For instance, discrimination, while reprehensible, is not always the same as persecution. But this Court has generally held that a pattern of physical harm combined with specific individualized threats generally rise to the level of persecution. Petitioner submits that this record shows that persecution is exactly what he experienced. What were the circumstances here that lead up to past persecution? He was an activist in the Nepali Congress Party, Your Honor. It's a party devoted to democracy in Nepal. He engaged in, as the record shows, he engaged in educational work, he recruited party members. What happened to him personally? He was threatened first by Maoists who objected to his political activity, and then he was physically attacked on two occasions. Once occurred when he was attempting to vote in 2013, and this is the second incident. The first incident was he received a threatening letter from the Maoists that said ominously, if you do not help our party, in other words, by joining and desisting from the Congress Party, it will not be a good thing for you. That's what the letter said. So, counsel, could you be more specific regarding the physical attack? What was the nature of the attack? He was attacked by a group of... What did they do? They hit him with sticks and fractured his arm. That was the first incident. So did he have medical attention? He did, yes. And how long was he hospitalized? He had, yes, he was hospitalized, and the Nepali Congress paid for his medical care. Where in the record can we confirm that he was hospitalized in the length of his stay in the hospital? I don't think the record is really specific on that, Your Honor. Is the record specific regarding whether he was hospitalized or treated outside hospitalization? Is the record clear on that? The record's not really specific about his medical care. He was treated. I shouldn't say he was actually hospitalized. He was treated. And is the record clear regarding the nature of the treatment? He had his arm set. His arm was set. Okay. Where in the record does it say that his arm was set? I believe he testified. Don't spend your time looking for it. If you have time on rebuttal, you can point us to the record on that. I'll do that. Did he ever report this incident to the police? No, he didn't. He didn't report it to the police because he was advised not to because it was too dangerous. The first incident that I just talked about, the party told him not to do it. There's another incident that I haven't gotten to. Before we leave that incident, that incident was not reported to the asylum officer during his interview. That's correct, Your Honor. Is there a reason for that? Well, he testified that he had forgotten to provide that detail during the asylum interview. So he hadn't reported the injury the first time. Did the IJ make an adverse credibility determination? No. No, Your Honor. The IJ noted that one detail that he had left it out and said that he implied that that was something that troubled him, but he did not make an adverse credibility determination. And then in view of that, the Board has deemed him credible. Why did the IJ and the BIA find against your client then as to past persecution? Because, well, the Board concluded that the total pattern considered and the IJ, too, for that matter, considered that the entire pattern considered cumulatively did not rise to the level of persecution. Because we've said that persecution is an extreme concept. That's correct. But this is only one incident. If this were the only incident, then there would be a good argument, I think, that this would not rise to the level of persecution. But the Court has also held that an entire pattern of incidents considered cumulatively is the proper norm. What's the worst that happened to your client? I would argue that the last incident, which happened in March 2016, when Maoist came to his home and pointed a pistol at him, essentially kidnapped him for several hours, made him go into the jungle and threatened him and gave him a death threat and said that he would be killed if he didn't comply with their demands. What were their demands? Money? They demanded money, and they also demanded that he stop his activity for the Nepali Congress Party. But they ultimately released him. That's right. Why is that? Because he told them he would get money and give it to them. So if we were to conclude, if we were to agree with you that he did suffer past persecution, then what are you asking for? I would ask that the entire pattern considered cumulatively does rise to the level of past persecution as a matter of law in accordance with this Court's previous precedents and that this Court should vacate the Board's decision and grant the petition and remand this matter. So they can then consider whether he could relocate? Yes. I think that would be the next issue. He would be entitled, as you know, if there's a finding of past persecution, he would be entitled to the benefit of a presumption of well-founded fear. Did he have any other claims for relief? He had a claim for withholding of removal, and he had a claim for ---- Well, if you prevail on past persecution, that would also relate to withholding, correct? That's correct. Did the Board make a finding regarding ability to relocate? The Board concurred with the IJA that his testimony regarding the ability to relocate did not support internal relocation. He merely said that he fled to Kathmandu, and he was there for a month, and he said that there were certain people who inquired about him. He was told that they inquired about him, and he, based on that, he, I think, I would submit reasonably determined that it was the people from the Maoist group who were after him because he had not complied with their demands in the March 2016 incident and fled. But if the Board's already made that determination, why would we need to remand for the Board to again address whether or not he could relocate? Because, well, I think that hinges on whether this Court agrees that the pattern arises to past persecution. If it does, if the Court concludes that, then the burden of proof would shift to the government to prove that internal relocation is reasonable. And in this case, the IJA imposed the burden on the petitioner. Okay. You want to save your two minutes for rebuttal? Yes, Your Honor. Okay. I remember you were going to give us that record site. Yes, Your Honor. Okay. Thank you. Good morning, Your Honors. Ann Wilhoff for Respondent, U.S. Attorney General Barr. May it please the Court. This case is subject to an extremely deferential standard of review. Petitioner needs to show this Court not only that the conclusion he seeks could have been made, but that the evidence absolutely compels that finding, that absolutely no reasonable fact finder could have found as the agency. What if there's an error of law? If there's an error of law, there's a de novo standard of review. I understand the argument to be that what the Board did, what the agency did, was to look at these incidents that the counsel just discussed in isolation. Is that what happened here? Either isolated or taken. Under our case law, you're supposed to look at the cumulative events that happened to the petitioner. I believe the agency did look at them cumulatively and made the explicit finding that even taking into consideration the incidents, there was three years between them. He never reported any of them to the police. It spanned over a four-year period, these incidents. It wasn't a repeated and severely threatening and menacing matter that was constant and ongoing. There was a four-year time period over which these three isolated incidents took place. And the agency determined that, even taken cumulatively, that... What do the country reports tell us about the Maoists in Nepal? Well, the Maoists, it's clear that there is several different fractions of Maoists. We're not sure exactly. There's no discussion in this record at all of what fraction this particular alien was involved with, I guess. And I'm not sure what the ideologies of all the different fractions are. But as far as the incident, the second incident where there was beating with sticks, I would point out the evidence is simply just not that compelling, and I believe the court will find that when it reads the testimony. The petitioner's statement was that he was going to vote with about 12 other people, and some people attacked the entire group with sticks. And the country reports document that, during that year, there was voter intimidation that occurred by the Maoists. Nonetheless, the election went off. It says approximately 73% of the country registered voters were able to make it to the polls and vote, and, in fact, petitioner's party won. Yes, there was the voter intimidation, but, again, that coupled with... As to the third incident, I want to make one correction to the record. I think that... Well, I thought opposing counsel only talked about two incidents. He actually talked about three. The first one was just a threat, a letter that was... Nothing came of that, though, and I would point out that after he got the threatening letter, he continued his activities. It wasn't so menacing and harassing that he was scared enough to stop whatever he was doing. As for the third incident, though, there is absolutely no evidence in this record that the Maoists were demanding that he stop his activities. You can look through his testimony and his asylum application. It sounds like a robbery. They demanded money. The only reason they let him go is he promised to pay them. I didn't see in the record anywhere, certainly not in the testimony, and I looked at the application and the declaration attached there, too, and it doesn't say that there was any political threats during that two-hour detention. It looked like a robbery. It was only a discussion of demanding money. As far as... Well, normally for a robbery, they don't drag you into the woods and hold you captive for two and a half hours, do they? They just wanted a robbery. I can't tell you what a typical robbery looks like. It happens, like home invasion. They'll hold you hostage and terrorize you and steal all your stuff. I think it can happen, but as far as the record evidence here, there was no interaction between the Maoists and Petitioner about his ideologies, stop this, stop your activities. There was no discussion of that nature. And the only thing he mentions was that they were demanding money, and he promised he'd give it to them, so they let him go. As far as... So the agency did not apply the presumption of past persecution, and it's our position that's very well grounded in this record. Well, I mean, there's case law that says that the courts have been consistent that physical harm constitutes persecution, right? Physical harm can, but it depends on the nature, severity, the repetitiveness of it. I mean, persecution does not include all conduct that society would find offensive. But if they beat him and broke his arm and then later pointed a pistol at him, that begins to sound fairly serious, doesn't it? Again, I would point out on the third one, it looks like a robbery. There's no interactions that would suggest it was a targeted political act. But, again, these are factual findings. The agency made the determination that, cumulatively, these incidents didn't rise to the level of persecution. And that is perhaps there's another permissible view of the evidence, and the fact finder's choice between two different very viable options cannot be clearly erroneous and is not... Well, it's not clearly erroneous. Because we'd have to be compelled to find the other way in order for us to reverse. You would. And that takes a lot more than just finding that you would have maybe ruled differently or that the evidence could support a different finding. It's absolutely no reasonable fact finder could have found on these facts. And I believe once you read the record, you will find that the testimony simply just wasn't that compelling. Even the testimony about the attacks with sticks on the group. He says there was 12 people he was at the polls with and that they came after the whole group with sticks. His testimony is really vague about injury. First he says it was his wrist. Then he said it was hand. Then he said it was his arm. And the judge just kind of said, okay, it doesn't really matter what it was. Did you go to the hospital? That's another correction, I think, that needs to be made. He did say he went to the hospital and got his arm plastered. He wasn't in the hospital for any lengthy period. I think it was outpatient treatment. That's the way I read the testimony, no overnight stay. Well, that's not atypical if you have a broken arm. They don't put you in the hospital for 10 days. Well, I guess it would depend on the disparity type of fracture, hairline fracture. I don't think so. I've suffered one myself. I think it really would depend on the severity, and I don't think that it was here. Again, look at the testimony. Petitioner was uncertain in his testimony of what was really even injured. You know, I guess what bothers me a little bit is if the IJ had made an adverse credibility finding, I think we'd give that a lot of deference. But the IJ didn't do that, did they? Did he? The IJ did not make a clear adverse cred, which is why the board just said, okay, we'll proceed on the assumption that what he says is true. And even accepting what he says is true, they made the finding that he was. Is that a finding or a conclusion that there was or was not past persecution? It's a finding of what happened to him factually and whether or not that rises to the level of being persecution. I guess at the end. It's a legal question. Kind of a mixed factual. The factual conclusion is made in route to making the ultimate answer. I mean, finding whether they broke his arm or didn't broke it, that's a fact. Yes. But, I mean, when you look at these facts and then you make a conclusion there was or was not past persecution, that's really a conclusion of law. But it's still entitled to deference, correct? Yes. The conclusion, whatever you call it, the determination of the board is upholding the findings of the IJ and we give deference to all of that. That's very well settled. Well, if it's an error of law, you just said we review it de novo. It's very, all the case law. Counsel, do you agree that there was an error of law in this case? No, I do not. No, you said, I asked you at the outset, if there is an error of law. If there is. Yes. So one of the arguments here, in our case law, our case law talks about you have to look at these incidents cumulatively. Yes. And to me it didn't look like that's what the board did or the IJ did. So if it didn't comply with our case law, isn't that an error of law and doesn't it then have to go back for a, then the conclusion, the legal conclusion is that he suffered past persecution under our case law and then has to go back for a determination of relocation with the burden being on the government, not on him. I believe that the agency did look at the events cumulatively. I'd refer the court to administrative record at 48 where the judge specifically says, even taking into account and considering these two incidents, and the judge was referring to the two incidences were physical harm. Right. Even taking those into account, he has not shown a well-founded fear of persecution. They were three years apart. He didn't go to the police. He hasn't established that the government won't protect him. I believe the agency did take into account the cumulative effect. How about the letter? The letter? Well, again, the agency found definitely that in isolation not to be persecution and not even that menacing because he continued doing what he was doing, what he said he was being threatened to stop doing. And the agency cited the Hoekse case, which looks at cumulative harm too. And there's many cases that we cited on our brief at page 15 and 16 where in looking at cumulative harm, the alien's burden on appeal is to point to evidence would compel a finding contrary what the agency concluded. And I submit that he has not done that, did not do that, and has not done that in his brief, and that the evidence does not compel a conclusion that he suffered persecution. The agency's decision is well-grounded in substantial evidence. You would agree, though, if we were ultimately to conclude that he did suffer past persecution under our case law, that it would have to go back. If that was the conclusion, yes, because then the presumption would attach and the government would bear the burden of coming forth with a preponderance of the evidence that he, yes. Relocation would be reasonable for him under his particular circumstances. Correct. Now, the relocation finding in this case was still part of his case in chief. And we, the government, or excuse me, the agency also found that he had not met that part of his burden either, and that's also. But the burden was on him at that point. At that point. And it would be on the government if it were remanded. That's correct. With the finding of, with the conclusion that the only permissible determination is one of past persecution that we'd have to make. That's correct. The government would have to. And if they came forth with a preponderance of the evidence, then it would go back to him to show. Okay. Thank you, counsel. I'll let you go over your time. We'll just give you two minutes for rebuttal. Thank you, Your Honor. You might tell us if you find any record proof that the 2016 incident was related to his politics as opposed to just a robbery as opposing counsel is. Yes. I heard counsel's argument, and it is correct that there's no testimony about that. There's no testimony that they said something about my politics, so I misremembered the record when I said that before. However, at page 108 of the record, the petitioner says he did not give the money because of his political opinion. In other words, he, money was demanded, but he refused ultimately to give the money because of his political opinion. He didn't want to give to the Maoists. I think it was $500,000. He didn't want to contribute to the Maoists. That's correct. But that doesn't say anything about what the intent of the robbers was. No, but there was a pattern. If there was just the one incident, then that would be, I think, a valid argument. But there was a pattern of activity here. It was a pretty attenuated pattern. There were years between the incidents. Right. But I think that goes to show that he was actually being targeted. If it was just a robbery, they took him out into the woods. It wasn't just that they came to his house and asked for money. They had him in the jungle for two hours. They pointed a pistol at him and said, if you report this at all to the police, we're going to kill you and kill your family. So it's a, yes, it's an extortion attempt, but it's in. But there were no political overtones. I mean, they didn't make any political remarks. So that would just be speculation on our part if we attributed a political motive to it. Respectfully, I would say that you have to look at the whole pattern, Your Honor. But we don't get to do that. Yeah. The only thing we can say is that that conclusion is compelled against the finding that was made by the IJ. Right. That's correct, Your Honor. With respect to your question about the setting of the arm, page 101 of the record, he talks about his arm was plastered. He went to the hospital, and he names the hospital. And I just wanted to address also, if I have time, do I have a second? The Hoekse case, the cases cited at page 16 of the government's brief are all distinguishable in that there are cases in which a member of a disfavored group was trying to argue that there was no individualized targeting. They had not been targeted individually, as the petitioner was in this case. But she cited that case for the proposition that the agency was looking at the cumulative impact, not that the circumstances of that case were identical, but just to show that the cumulative impact was in the analysis of the case. Yeah, but I think it's analytically a very different kind of case. Okay. All right. Thank you, counsel. Thank you, Your Honor. Thank you, counsel, for your arguments. The matter is submitted at this time.
judges: Gilman, Paez, Rawlinson